IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNARD ISAIAH LOVE,<br><br>    Petitioner,<br><br>vs.<br><br>RANDY GROUNDS, Warden,<br><br>    Respondent. | No. C 11-6283 CRB (PR)<br><br>ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |

Petitioner, a state prisoner at Salinas Valley State Prison, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging a conviction and sentence from Santa Clara County Superior Court. For the reasons that follow, the petition for a writ of habeas corpus will be denied.

**STATEMENT OF THE CASE**

On July 22, 2009, a jury convicted Petitioner of four counts of second degree robbery, four counts of assault with a firearm, two counts of making criminal threats, and two counts of possession of a firearm by a felon.

On August 14, 2009, the trial court sentenced Petitioner to twenty-eight years in state prison. Petitioner appealed.

On December 30, 2010, the California Court of Appeal affirmed the judgment of the trial court. The court did modify Petitioner's sentence with

respect to one of the convictions for being a felon in possession of a firearm. But as this portion of the sentence was already running concurrently with another, it did not change the actual length of Petitioner's sentence.

On February 9, 2011, Petitioner filed a petition for review in the California Supreme Court. The state high court denied the petition on March 30, 2011.

On July 26, 2011, Petitioner filed a petition for a writ of certiorari in the United States Supreme Court. The Supreme Court denied the petition on October 11, 2011.

Petitioner also unsuccessfully sought collateral relief from the state courts. On January 4, 2012, the California Supreme Court denied his final petition for state habeas relief.

On December 14, 2011, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 claiming improper exclusion of evidence and, on April 4, 2012, filed a second petition claiming a Confrontation Clause violation and ineffective assistance of counsel.

On April 12, 2012, this Court consolidated the two petitions and, after finding the claims cognizable under § 2254, ordered Respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer and Petitioner has filed a traverse.

## STATEMENT OF FACTS

The California Court of Appeal summarized the facts of the case as follows:

**A. Counts 3-9**

> On December 1, 2007, Hugo Rodriguez found on Craig's List a Nissan pickup truck he was interested in buying. The listing included a phone number, 408-317-5404, which Rodriguez called. A man said he had the pickup, so Rodriguez arranged to meet the man at an address on Temple Drive in Milpitas. Rodriguez drove to Milpitas with his wife, his three-month-old daughter, and his

brother around 7:00 p.m. When Rodriguez could not find the address given him, he called the number again. The man told Rodriguez that he would go out into the street and wait for him. When Rodriguez approached a man in the street, who he identified at trial as defendant, he was directed to drive into an apartment complex.

Rodriguez drove into the complex and asked where the pickup was. Defendant said that his aunt took it to the grocery store. Rodriguez tried to back his car out of the complex but his car died. Defendant quickly approached Rodriguez's car, so Rodriguez began to get out of the car in order to try to talk to defendant. Defendant was wearing a hooded sweater and black gloves. He took a black semi-automatic gun out from under his shirt and put it against Rodriguez's abdomen, forcing Rodriguez back into his car. When Rodriguez sat back down, defendant put the gun to Rodriguez's neck. Defendant said, "give me your money or I'm gonna kill you." Rodriguez was afraid for his family. His brother told defendant that they did not have the money. Defendant then slid the top portion of the gun back as if he was getting ready to shoot it. The gun felt, looked, and sounded to Rodriguez like it was metal, not plastic. He did not see an orange tip at the barrel of the gun. He was sure that it was a real gun. Defendant aimed the gun at Rodriguez's brother and told him that he was going to kill him. Rodriguez said that they did not have the money, but his brother offered defendant the money if defendant would not do them any harm. Rodriguez told his brother to give defendant his money or defendant would kill them. Defendant said "what did you say," and he hit Rodriguez in the corner of his right eyebrow with the butt end of the gun. The resulting injury hurt a lot and bled.

Rodriguez's wife starting crying. His brother told defendant to take the money and leave. Defendant also asked for and took defendant's and his brother's cell phones and wallets and defendant's car keys. Rodriguez lost $3,800 and his brother lost $800. Defendant then told them not to move or he would kill them. Defendant ran towards the apartments and disappeared. After he left, Rodriguez asked a woman for help and called 911. A recording of the 7:23 p.m. 911 call was played for the jury. In the call, Rodriguez described the robber as a Black man, about 30 years old, wearing blue jeans and a white sweater with blue writing, and using a black handgun. When the police arrived, Rodriguez told them everything.

No shell casings or bullets were found during a search of Rodriguez's car and the area around it.

**B. Counts 10-14**

Isidiro Lopez also found a pickup truck on Craig's List on December 1, 2007, that he was interested in buying. He called the phone number listed, 408-317-5404, and agreed to meet a man at

3

some apartments on Rinconada in San Jose. He drove to the address with his friend Freddie Perez, and arrived around 6:30 p.m. The man was not at the address so Lopez called him again. The man said he was with a friend buying food and he told Lopez to wait for him at a corner store. Lopez drove to the store and waited. A man wearing a hooded sweatshirt, who Lopez identified at trial as defendant, approached the car and asked Lopez if he was the person interested in the vehicle. Lopez said that he was.

Defendant opened the car's back door and got in. He took out a black semi-automatic handgun, said go, and waived them into the apartment complex. Defendant put the gun against Lopez's head and told him to give him the money. Lopez said that he did not have any money. Defendant slid the rack back on the gun and said, "give me the money or I'll shoot." Lopez turned around and gave defendant his money. Lopez then saw that defendant was wearing gloves, and that the gun looked like the one police officers use. It did not have an orange tip. Defendant asked Perez for his wallet and both their cell phones and the car keys. Perez said no. The man hit both Perez and Lopez in the head with the butt of his gun. Lopez testified that, judging by the weight of the gun, it was not an imitation, and it had not sounded like a BB gun when defendant slid the rack back. Both Perez and Lopez sustained injuries as a result of being struck by the gun. Defendant got out of the car, opened the passenger side door, and pointed the gun at Perez. Perez gave defendant what he asked for. The man kicked Perez in the leg once then ran out to the street. Lopez lost his cell phone and car keys, and Perez lost his wallet and money.

Lopez borrowed a cell phone and he and Perez called 911. A recording of their 7:49 p.m. 911 call was played for the jury. During the call, Perez provided a description of the person who robbed them. He said that it was a Black man, who was about 24 years old and who was wearing a dark jacket. Lopez told responding officers that the robber was wearing a light-colored hooded sweatshirt and black gloves and had a black gun. An officer found $3,000 of Lopez's money on the floorboard in the back seat of his car where defendant had dropped it.

Lopez identified a person other than defendant as the robber during a photographic lineup just before Lopez testified at the preliminary examination. However, when Lopez testified at the preliminary examination, he identified defendant as the robber.

**C. The Investigation**

Milpitas Police Sergeant Raj Maharaj contacted Sprint and had the cell phone listed in the Craig's List ad tracked beginning around 4:00 p.m. on December 5, 2007. When Sprint reported that the phone moved from San Jose to Lone Tree Court in Milpitas, which is a residential cul-de-sac, officers started conducting surveillance in the area around 5:00 p.m. that evening. They ran the

4

license plate of a vehicle parked in the area and determined that it was registered to defendant. A photographic lineup using a photograph of defendant was created and shown to Rodriguez.

On the evening of December 5, 2007, at the Milpitas Police Department, Rodriguez was shown six photographs one by one and asked if he could identify the robber. He was shown the sequence of photographs three times. He identified the robber as the man in photograph number one. He said that he was 100 percent sure that it was the man. The photograph he identified was of defendant. Around 10:50 p.m. that evening, officers followed and then stopped a vehicle leaving Lone Tree Court near where defendant's car was parked. Keith Rucker, the driver of the vehicle, and defendant, the passenger in the vehicle, were both taken into custody. Defendant was wearing a light-colored hooded sweatshirt, and Rucker was wearing a black hooded parka. Officers found $703 during a search of Rucker. A cell phone and $35 was found during a search of defendant, but the phone's number was not the one listed in the Craig's List ad. Officers called the number listed in the Craig's List ad and heard a phone ringing inside defendant's car parked on Lone Tree Court. They seized the phone from the glove box inside the car. Rodriguez's phone number and the phone number of the cell phone found on defendant's person (510-677-1602) were listed on the phone taken from defendant's car.

No photographic lineup that included a photograph of Rucker was ever shown to any of the victims. No gun or cash was found in defendant's car. Officers determined that no weapons were registered to defendant. The parties stipulated that defendant had previously been convicted of a felony.

George Parsons, an employee of Metro PCS, testified that their records showed that defendant's cell phone (510-677-1602) was utilizing a cell tower in Milpitas near Temple Drive when it received a call at 7:10 p.m. on December 1, 2007. The cell phone was utilizing a cell tower on East Capital Expressway near Rinconada Drive in San Jose when it received a call at 7:53 p.m. that same night. Parsons further testified that 99.99 percent of all cell phone calls use the closest cell tower.

After the trial court denied defendant's request to call a firearm expert to testify regarding imitation firearms, and to admit a transcript of Rucker's no contest pleas and admissions in this case, the defense rested without calling any witnesses or presenting any other evidence.

**D. The Verdicts and Sentencing**

On July 22, 2009, the jury found defendant guilty of four counts of second degree robbery (§§ 211, 212.5, subd. (c); counts 4, 7, 11 & 13), four counts of assault with a firearm (§ 245, subd. (a)(2); counts 5, 8, 12 & 14), two counts of making criminal threats

5

> (§ 422; counts 6 & 9), and two counts of possession of a firearm by a felon (§ 12021, subd. (a)(1); counts 3 & 10). The jury further found true allegations that defendant personally used a handgun during the commission of the offenses in counts 4 through 9 and 11 through 14 (§§ 12022.5, subd. (a), 12022.53, subd. (b)). The jury found defendant not guilty of two counts of second degree robbery (counts 1 & 15), two counts of attempted second degree robbery (counts 17 & 18) and one count each of possession of a firearm by a felon (count 2) and assault with a firearm (count 16).
>
> On August 14, 2009, the court sentenced defendant to 28 years in prison. The sentence consists of the upper term of five years on count 4 (second degree robbery) with a consecutive term of 10 years for the weapon use enhancement; consecutive terms of four years four months (one-third the middle term plus the weapon use enhancement) on each of counts 7, 11, and 13 (second degree robbery); and concurrent terms of three years each on counts 3 and 10 (possession of a firearm by a felon). The court stayed the terms on the assault with a firearm counts (counts 5, 8, 12, & 14) and the criminal threats counts (counts 6 & 9).

People v. Love, No. H034581, 2010 WL 5407352, at *1-4 (Cal. Ct. App. Dec. 30, 2010) (footnotes omitted).

## STANDARD OF REVIEW

This court may entertain a petition for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

## CLAIMS & ANALYSIS

Petitioner raises three claims for federal habeas corpus relief under 28 U.S.C. § 2254: (1) improper exclusion of evidence, (2) denial of right to confront witnesses, and (3) ineffective assistance of counsel.

7

1.     Improper Exclusion of Evidence

Petitioner claims that the trial court erred in not allowing him to introduce into evidence an imitation firearm and expert testimony regarding the similarities between a real and an imitation firearm. Pet. [Dec. 14, 2011] at 9. Petitioner argues that this evidence would have cast "reasonable doubt" on whether the gun used in the robberies was a real weapon. Id. The claim is without merit.

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fair trial guaranteed by due process. See Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991). Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999); Jammal, 926 F.2d at 919. While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated. Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir. 1983).

"State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (citations omitted); see also Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (due process does not guarantee a defendant the right to present all relevant evidence). But this latitude is limited by a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments. See Holmes, 547 U.S. at 324. Compare Lunbery v. Hornbeak, 605 F.3d 754, 762 (9th Cir. 2010) (finding California's application of its evidentiary rules to exclude hearsay testimony that

bore persuasive assurances of trustworthiness and was critical to the defense violated right to present evidence) with <u>Rhoades v. Henry (Baldwin)</u>, 638 F.3d 1027, 1034-36 (9th Cir. 2011) (finding no due process violation in state court's decision to exclude as unreliable the hearsay evidence that third party confessed where confession was made while intoxicated, was later recanted, and was unsupported by physical evidence).

The California Court of Appeal rejected Petitioner's improper exclusion of evidence claim on direct appeal. The court explained:

> In the case before us, the firearm used in the robberies was never recovered, but the victims of the robberies testified that the firearm used looked, felt, and sounded like a real gun. Rodriguez testified that "[t]he gun was in iron, and it was-it hurt me a lot ." "I was sure that it was true gun, a real gun." Lopez testified that it was not an imitation or BB gun. "Judging by the weight, it was not imitation, it was real. . . ." He has bought BB guns, "[b]ut it didn't sound the same." Defendant sought leave to present an imitation firearm, specifically a plastic gun, and an expert witness. The expert had never seen the weapon used in the robberies, but his proposed testimony was that an imitation firearm resembles a real firearm so that there was a possibility that the weapon used during the robberies was not a real firearm. The court properly found that, on the record before it, the proffered evidence was irrelevant in that it had no "tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)
>
> The relevance of the proffered evidence (the demonstration of a plastic imitation firearm and the expert testimony on imitation firearms) depended on the existence of a preliminary fact (the firearm used in the robberies might have been an imitation firearm), and defendant had the burden of producing evidence as to the existence of the preliminary fact. (Evid. Code, § 403, subd. (a).) Defendant could have done this by eliciting testimony from a witness that the weapon he saw could have been plastic, or could have been a BB gun, or otherwise looked, felt, and/or sounded like it could have been an imitation firearm. As defendant was unable to elicit such testimony from any witness, the court did not err in ruling that his proffered evidence on imitation firearms was inadmissible. (<u>Ibid.</u>) This is so even though the trial court denied defendant's request to conduct an Evidence Code section 402 hearing. As cross-examination of the victim-witnesses was the most obvious means of discovering any basis for defendant's claim of the existence of the preliminary fact, and defense counsel was provided every opportunity to cross-examine the witnesses

regarding the possibility that the weapon used in the robberies might not have been a real firearm, the trial court here was within its discretion in refusing to conduct additional proceedings outside the jury's presence on that issue. (Williams, supra, 16 Cal.4th at p. 197.) We are satisfied that there was no abuse of discretion.

Furthermore, by refusing defendant's motion for leave to present the imitation firearm and expert testimony, the trial court's alleged error, if any, did not rise to the level of an unconstitutional deprivation of defendant's right to present a defense. "As a general matter, the '[a]pplication of the ordinary rules of evidence ... does not impermissibly infringe on a defendant's right to present a defense.' [Citations.] Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense. [Citation.] If the trial court misstepped, '[t]he trial court's ruling was an error of law merely; there was no refusal to allow [defendant] to present a defense, but only a rejection of some evidence concerning the defense.' [Citation.] Accordingly, the proper standard of review is that announced in People v. Watson (1956) 46 Cal.2d 818, 836, and not the stricter beyond-a-reasonable-doubt standard reserved for errors of constitutional dimension. [Citation.]" (People v. Fudge (1994) 7 Cal.4th 1075, 1102-1103.)

Although the trial court did not allow defendant to present to the jury an imitation firearm and expert testimony on imitation firearms, any error was harmless. Defendant's defense was that the robber was Rucker and that the robber used an imitation firearm. Defense counsel was able to cross-examine all witnesses regarding the possibility that the robber was Rucker and the possibility that the robber used an imitation firearm. Defense counsel was also able to argue to the jury that the robber was Rucker and that the prosecution had not proved that the firearm Rucker used was a real firearm and not an imitation. Thus, assuming the trial court erred by not allowing defendant's proffered demonstrative and expert testimony, defendant was still able to place before the jury evidence regarding his defense. In light of the eyewitness identifications of defendant, the witnesses' description of the weapon used in the robberies, the injuries suffered by the victims as a result of being hit on the head with that weapon, and the testimony that the cell phone used in the robberies was found in defendant's car a few days after the robberies occurred, we cannot say it is reasonably probable that the jury would have reached a more favorable verdict in the absence of any such alleged error. (People v. Watson, supra, 46 Cal.2d at p. 836.) Accordingly, we find that defendant has failed to show a deprivation of his constitutional rights to present a defense, to due process, and to a fair trial.

People v. Love, 2010 WL 5407352, at **10-11.

The California Court of Appeal's rejection of Petitioner's improper

10

exclusion of evidence claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or involved an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). The state appellate court reasonably determined that the proffered demonstration of a plastic imitation firearm and expert testimony on imitation firearms was irrelevant because there was no showing whatsoever that the firearm used in the robberies might have been an imitation firearm. Petitioner simply sought to cast doubt on whether the firearm used was a real weapon. Cf. Holmes, 547 U.S. at 324 (judges have broad latitude to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues or potential to mislead the jury). Morever, Petitioner was not prevented from otherwise putting on his defense. He was free to cross-examine witnesses regarding the type of gun used, including its physical characteristics and the like. Under the circumstances, it cannot be said that the exclusion of the evidence at issue "offend[ed] some [fundamental] principle of justice." Egelhoff, 518 U.S. at 42.

Nor can it be said that the exclusion of the proffered evidence had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). As the California Court of Appeal noted, Petitioner faced a significant amount of evidence against him regarding the use of a real firearm, such as the witnesses' description of the look and feel of the gun and testimony regarding the injuries of the victims. See Love, 2010 WL 5407352, at *11. Petitioner is not entitled to federal habeas relief on his improper exclusion of evidence claim.

### 2. Denial of Right to Confront Witnesses

Petitioner claims that he was denied his right to confront witnesses in two ways: (1) by the prosecution's failure to call two victims as witnesses; and (2) by his inability to cross-examine a witness whose statement was brought into trial

11

through hearsay. Pet. [Apr. 4, 2012] at 10.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. This right applies to all "testimonial" statements, whether sworn or unsworn, and to both in-court testimony and out-of-court statements introduced at trial. Crawford v. Washington, 541 U.S. 36, 51-52 (2004). But "[t]he Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at 59 n.9. Only testimonial statements offered for the purpose of establishing the truth of the matter asserted are inadmissible unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. Id. at 68.

Confrontation Clause claims are subject to harmless error analysis. United States v. Nielsen, 371 F.3d 574, 581 (9th Cir. 2004) (post-Crawford case). For purposes of federal habeas corpus review, the standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an actual and prejudicial effect upon the jury. See Hernandez v. Small, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

Petitioner argues that the prosecution's failure to call Francisco Rodriguez and Freddie Perez, the brother and friend of Hugo Rodriguez and Isidiro Lopez, respectively, violated his confrontation rights and deprived him of a fair trial. Pet. [Apr. 4, 2012] at 10. The Confrontation Clause provides the accused with the right to be confronted with the witnesses against him and the Due Process Clause guarantees him a fair trial. But neither the Confrontation Clause nor the Due Process Clause provides the accused with a right to force the prosecution to call every possible witness. See Cooper v. California, 386 U.S. 58, 62 n.2 (1967). As the California Superior Court recognized in rejecting Petitioner's

12

claim, "it appears that the District Attorney chose to only call one victim from each robbery to describe Petitioner's actions." Pet. [Apr. 4, 2012], Ex. F at 2. If Petitioner thought that either of these victims/witnesses would have provided helpful testimony, he could have called either witness himself. Petitioner is not entitled to federal habeas relief on this claim because the state court's rejection of the claim was not objectively unreasonable. See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.

Petitioner also claims that his confrontation rights were violated when he was not permitted to cross-examine Francisco Rodriguez, even though Rodriguez's statements were allowed into the trial through his brother's testimony. Pet. [Apr. 4, 2012] at 10. The claim fails for two reasons: (1) the statements were not testimonial or admitted for the truth of the matter; and (2) even if testimonial, the statements did not have a prejudicial effect on the jury.

Petitioner points to Hugo Rodriguez's testimony as the basis for his claim, and argues that he should have been permitted to cross-examine Francisco Rodriguez because Hugo Rodriguez testified as to his brother's statements. Id. at 10. But the statements at issue were not testimonial because they were not statements taken as a substitute for trial testimony. See Michigan v. Bryant, 131 S. Ct. 1143, 1155 (2011). Rather, Hugo Rodriguez merely relayed his recollection of events and referenced his brother's comments during the incident. Importantly, none of Francisco's statements were admitted for the purpose of establishing the truth of the matter asserted. See Crawford, 541 U.S. at 59 n.9.

Even if there was a Confrontation Clause error, Petitioner is not entitled to federal habeas relief because there was no prejudice. Hugo Rodriguez merely stated that his brother said "we don't have the money" and "here is the money but don't do any harm to us" to the armed man who was robbing them. R. 1211, 1212. In light of the substantial amount of evidence against Petitioner, including

13

the fact that Hugo Rodriguez identified him and the cell phone used to arrange the robberies was found in his car, the admission of Francisco Rodriguez's statements without cross-examination cannot be said to have had a substantial and injuries effect in determining the jury's verdict. See Brecht, 507 U.S. at 637. Petitioner is not entitled to federal habeas relief on this claim because the state court's rejection of the claim was not objectively unreasonable. See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.

### 3. Ineffective Assistance of Counsel

Petitioner claims ineffective assistance of counsel on the ground that counsel failed to call Elizabeth Hemingway as a witness. According to Petitioner, Ms. Hemingway could have established the relevance of his proffered imitation firearm evidence. Pet. [Apr. 4, 2012] at 13.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id. The right to effective assistance of counsel applies to the performance of both retained and appointed counsel without distinction. See Cuyler v. Sullivan, 446 U.S. 335, 344-45 (1980).

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim under Strickland, petitioner must establish two things. First, he must establish that counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, he must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.

It is unclear whether counsel failed to call Ms. Hemingway as a witness or whether the trial court prevented counsel from calling her as a witness. Compare Pet. [Apr. 4, 2012] at 13 (arguing that counsel should have called Hemingway as a witness), with Pet. [Apr. 4, 2012], Ex. F at 2 (suggesting that the trial court prevented Hemingway from being called).  Regardless of why counsel did not call Ms. Hemingway as a witness, Petitioner's claim fails because he has not proven the prejudice prong of the Strickland test.

Ms. Hemingway's testimony would only have established that Petitioner owned an imitation firearm, not that he used it that day.  But even if this had been enough to admit the proffered imitation firearm and expert testimony, the California Superior Court rejected Petitioner's claim on the ground that he had "not established that . . . [the imitation firearm and expert testimony] . . . would have been believed by the jury and made a difference in the outcome."  Pet. [Apr. 4, 2012], Ex. F at 2.  In view of the substantial evidence presented at trial against Petitioner, including the eyewitness descriptions of the gun and the injuries suffered by the victims, it simply cannot be said that the state court's rejection of Petitioner's ineffective assistance claim was an objectively unreasonable application of Strickland.  See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409. Petitioner is not entitled to federal habeas relief on his ineffective assistance claim.

## CONCLUSION

After a careful review of the record and pertinent law, the Court is satisfied that the petition for a writ of habeas corpus must be DENIED.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a certificate of appealability (COA) under 28 U.S.C. § 2253(c) is DENIED because

petitioner has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

The clerk shall enter judgment in favor of the respondent, terminate all pending motions as moot and close the file.

SO ORDERED.

DATED:  April 15, 2013

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.11\Love, K.11-6283.denial.final.wpd